Hinkle, J.
Plaintiff David Notarangelo, acting as Administrator of the Estate of Ann Marie Notarangelo, moves for summary judgment on defendant’s affirmative defense of public employee immuniiy. Defendant claims that he is immune from suit for wrongful death and pain and suffering because he is a public employee within the meaning of G.L.c. 258, §2, the Massachusetts Tort Claims Act. Plaintiff on the other hand alleges that defendant was under the direction and control of Boston University Medical Center Hospital (“University Hospital”) at all times relevant to this case and, therefore, he is not protected by public employee immunity.
This case is before the court on plaintiffs motion entitled Rule 9A(b)(5) Concise Statement of Undisputed Material Facts and Legal Elements Upon Which Summary Judgment Rests. Because of the issues presented in this motion, I treat it as a renewed motion for summary judgment on the defendant’s affirmative defense of public employee immuniiy. In April 1998,1 denied an earlier motion for summary judgment on the issue of public employee immunity. The case was then set down for trial, and I intended to bifurcate the issues, trying first the public employee question. After additional *490 discovery, plaintiff submitted this motion. After a hearing, I allowed the motion because trial was imminent, stating that this written decision would follow.
BACKGROUND
The following facts, and reasonable inferences therefrom, are viewed in the light most favorable to the defendant as the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Although the parties’ Joint Pre-Trial Memorandum in Respect of Trial of the Public Employee Immunity Issue Only states that there are no agreed upon facts, the following issues are not disputed in the documents provided to the court with this motion.
Ann Marie Notarangelo died on August 18, 1993 following complications from treatment that she received at University Hospital. Defendant, a resident or “house officer” in oral and maxillofacial surgery at Boston University’s School of Graduate Dentistry (“residency program”), participated in Ann Marie’s treatment while she was a patient at University Hospital. Dr. Cataudella’s treatment of Ann Marie Notarangelo was supervised by Dr. Joseph Ordia. Dr. Ordia was an employee of University Hospital as well as a clinical instructor at both University Hospital and City Hospital. (Ordia Depo., pg. 6-7.)
The oral and maxillofacial surgery residency program in which defendant participated, operates jointly among Boston University, Tufts University, University Hospital, City Hospital and other Boston-area medical facilities. The City of Boston, through its Department of Health and Hospitals, contracted University Hospital to provide clinical instructors to supervise all oral and maxillofacial surgery residents who worked at University Hospital. The clinical supervision provided by University Hospital included day-to-day oversight of City Hospital house officers while they were on rotation at University Hospital. The clinical instructors provided by University Hospital and many of the residency program administrators worked at both City Hospital and University Hospital. Based on the cooperative nature of the residency program, defendant viewed it as “one big program [that] covered both hospitals."
As part of the residency program, the defendant worked in rotations at Boston City Hospital (“City Hospital”), University Hospital, Tufts New England Medical Center and Veteran’s Administration Hospital. Defendant spent approximately 76 weeks working at City Hospital and 120 weeks combined at all other hospitals. City Hospital reserved the right to establish work rules and regulations as to the “most appropriate methods” of care to be rendered by its house officers, whether working in city or private facilities.
During his residency, Dr. Cataudella had no privileges to admit patients to University Hospital, nor did he have any discretion in selecting which patients to treat. The defendant concedes that his activities “were carried on under the immediate direction of the individual service chiefs and department heads" at University Hospital. (Def. Brief, 7.)
Defendant’s salary and benefits during his residency were paid by City Hospital regardless of where he actually worked. Defendant completed several forms in order to be included on the City’s payroll and to participate in its public employee retirement fund. In addition, defendant was a member of the House Officer’s Association, a collective bargaining unit that represented all City Hospital house officers, including those on rotations at hospitals other than City Hospital.
Plaintiff asserts that the following facts are not in dispute. The record before me supports that assertion. University Hospital was responsible for setting the schedules for house officers working in its facility. (Def. Brief, Appendix of Docs., 122.) House officers’ schedules were required to include: name, title, payment source, dates of assignment, and location of each house officer on rotation at University Hospital. (Def. Brief, Appendix of Docs., 125.)
DISCUSSION
Plaintiff argues that he is entitled to summary judgment on defendant’s affirmative defense because the defendant is not a “public employee” within the meaning of G.L.ch. 258, §2. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Mass.R.Civ.P. 56(c). The moving party has the burden of showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Flesner v. Technical Communications Corp., 410 Mass. 805, 808-09 (1991) (citations omitted); Nashua Corp., 420 Mass. at 202. “This burden need not be met by affirmative evidence negating an essential element of the plaintiffs case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Id., citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The substantive law will identify whether a fact, in the context of the case, is material. Beatty v. NP Corp., 31 Mass.App.Ct. 606, 608 (1991).
The Massachusetts Tort Claims Act (MTCA) grants “public employees” immunity from liability for “injury or loss of property or personal injury or death caused by the[ir] negligent or wrongful act or omission . . . while acting within the scope of [their] office or employment.” G.L.ch. 258, §2. Although G.L.ch. 258, §2 does not define public employees, it defines public employer as one who “exercises direction and control over [a] public employee.” Id.
*491 The Supreme Judicial Court has adopted the “direction and control” standard in determining whether a medical resident is a “public employee” under G.L.ch. 258, §2.[1] See Kelley v. Rossi, 395 Mass. 659, 661 (1985). The Supreme Judicial Court has stated that, “[A] house officer, such as a resident, has duties and obligations at a hospital that demonstrate that he or she is a servant ... [t]he general rule is that a resident is a servant of the hospital.” Id. In order to determine whether a medical resident is a “public employee” under G.L.ch. 258, §2, the court in Kelley v. Rossi looked to such facts as the resident’s daily activities and schedule, the resident’s lack of discretion in selecting patients and the resident’s lack of admittance privileges. Id.
Traditional notions of “employer” are not synonymous with the direction and control standard. In Williams v. Hartman, the Supreme Judicial Court held that “[A] physician is not necessarily a public employee simply because a public entity pays his or her salary, provides a retirement fund, or manages a vacation schedule.” 413 Mass. 398, 400 (1992).
The uncontroverted evidence before me shows that the City lacked direction and control over the defendant’s daily activities while he worked at University Hospital. Therefore, I find and rule that defendant is not a public employee within the meaning of G.L.ch. 258, §2. Although the City paid defendant, provided him with benefits and considered him a public employee for purposes of a collective bargaining agreement, these factors do not show that the City directed and controlled defendant’s day-to-day treatment of patients.
Here defendant’s treatment of Ann Marie was supervised directly by Dr. Ordia, an employee of University Hospital. Defendant did not select Ann Marie as a patient, did not admit her to the hospital and did not have such privileges with regard to any other patients. Furthermore, University Hospital set defendant’s daily work schedule and appointed Dr. Ordia to supervise his treatment of Ann Marie. Defendant in fact admits that his professional conduct was “caiTied on under the immediate direction of the individual service chiefs and department heads.” There is no evidence that anyone other than attending physicians of University Hospital exercised daily supervision and control over defendant’s treatment of patients.
While Boston City Hospital reserved the right to establish work rules and regulations as to the “most appropriate methods” of care to be rendered by medical residents, defendant has presented no evidence to demonstrate that the City actually promulgated such rules or that those rules, if any, affected in any manner defendant’s day-to-day treatment of Ann Marie.
Defendant claims that Williams v. Bresnahan, 27 Mass.App.Ct. 191 (1989), requires this court to conclude that he was both an employee of Boston City Hospital and University Hospital. In Wiliiams, the Appeals court held that “house officers” at Boston City Hospital could be both employees of the City and the attending physician. The Williams case is distinguishable from this case because the “house officers” in Williams were residents at Boston City Hospital at all times relevant to the injury alleged in that action. Because Williams never addressed the City’s control of residents working at other hospitals, I find and rule that it is not controlling precedent here.
ORDER
For the foregoing reasons, plaintiffs renewed motion for summary judgment on defendant’s affirmative defense of public employer immunity is ALLOWED.

 At the hearing on this motion, defendant argued that the appropriate standard in this case was the right to direct and control, rather than actual direction and control of defendant’s treatment of patients. Massachusetts case law does not support this distinction.