Leibensperger, Edward P., J.
This motion presents the issue of whether a nurse employed by a “public employer,” as defined by G.L.c. 258, §1, the Massachusetts Tort Claims Act, may be held liable for medical malpractice. While it is undisputed that the nurse here was employed by a public employer at the time of the alleged malpractice, the question presented is whether the exercise of professional judgment by a nurse regarding the clinical care of the patient raises a genuine issue of material fact as to whether she was acting as a “public employee” under the Act and, thus, entitled to immunity from liability under §2 of c. 258.
Plaintiffs are the parents of, and the co-administrators of the estate of, Brandon Pedro Daggett. Brandon died a few days after his birth on July 17, 2007. Plaintiffs sue the attending physician, Miriam Gold-farb, M.D., the attending nurse, Melissa Abell-Bardsley, R.N., and Cambridge Health Alliance (“CHA”) claiming that defendants’ negligence in connection with the care and treatment rendered to Laura Pedro and Brandon at Cambridge Hospital caused the death and conscious suffering of Brandon. Abell-Bardsley moves for summary judgment dismissing all of the counts of the complaint directed towards her (Counts IX through XVI).
Abell-Bardsley contends that the facts, conceded by plaintiffs, that she was employed by CHA, a public employer, and was acting within the scope of her employment at the time of the alleged negligence, end the inquiry. She is entitled to immunity under the Tort Claims Act. Plaintiffs, on the other hand, argue that the relevant question is whether Abell-Bardsley was directed and controlled by CHA in the specific instance of her treatment of Pedro and Brandon. Plaintiffs assert that the issue of direction and control presents a disputed fact question because Abell-Bardsley necessarily exercised some independent judgment and discretion in carrying out her duties. Thus, summary judgment must be denied. The Court rejects both of these overly simplified approaches to the resolution of the issue.
FACTS
The following facts are taken from the parties’ Consolidated Statement of Material Facts as to Which There is No Genuine Issue to be Tried, submitted pursuant to Superior Court Rule 9A(b)(5), and the pleadings, depositions and affidavits submitted by the parties. These facts are not disputed.
Brandon was born at the Cambridge Hospital on July 19, 2007. Cambridge Hospital was owned and operated by the Cambridge Public Health Commission, operating under the name CHA. At all times relevant to plaintiffs’ claims, and in particular on July 19, 2007, Abell-Bardsley was a staff nurse employed by CHA. CHA is a “public employer” as defined by the Tort Claims Act. At all times relevant to plaintiffs’ claims, Abell-Bardsley was performing within the scope of her employment as a nurse on the labor and delivery floor of the Cambridge Hospital.
Abell-Bardsley was a nurse licensed to practice in the Commonwealth of Massachusetts. She was hired by CHA on October 11, 2004 as a General Duty Nurse in Labor and Delivery and remained in that position. She was paid an hourly wage. She received a W-2 form as an employee of CHA. She received employment benefits, including vacation pay, sick pay, health insurance, malpractice insurance and retirement benefits, through CHA.
CHA set Abell-Bardsley’s work hours and determined which patients she cared for as a staff nurse. Abell-Bardsley did not have any private patients. She did not have any admitting privileges at CHA. She did not bill CHA patients directly for any nursing services. Her income was not affected by the number of patients she saw or treated.
As a staff nurse, Abell-Bardsley was subject to the rules, regulations and protocols of CHA’s Department of Nursing. On the dates at issue, she was subject to the supervision of a Nurse Manager and the Director of Nursing, employees of CHA. Abell-Bardsley understood and believed that she was under the control of CHA and its employees at all times. CHA also under *560 stood and believed that Abell-Bardsley was subject to its direction and control at all times in the course of her employment. The only facts offered by plaintiffs in opposition to summary judgment are the following. In response to the assertion by defendants that Abell-Bardsley was a “public employee,” plaintiffs deny the assertion and state “(t)here is or will be evidence that, at various times, Nurse Abell-Bardsley provided independent care and treatment to the patient during labor and, at various times, used her independent judgment in making such determinations which are the center of the allegations against her in the case at bar.” In support of that statement, plaintiffs attach excerpts from the deposition of defendant Dr. Goldfarb and unsworn opinion letters from their expert physicians.[1]
Dr. Goldfarb testified that nothing in obstetrics is black and white. She testified concerning the medical issues involved in the care of Pedro and Brandon by herself and Nurse Abell-Bardsley. She stated that attending nurses use their nursing judgment, after monitoring the contraction pattern and assessing the pressure catheter, as to when or if Pitocin doses should be increased during labor. There are protocols on Pitocin and the physician writes the orders, but the nurse does not need to come back to the physician every twenty minutes to ask whether the dose should be increased. The same judgment is exercised by the nurse as to whether to decrease Pitocin. With respect to plaintiff Pedro and Brandon, Dr. Goldfarb stated, however, that it was “completely my responsibility” to make all of the decisions related to Pedro’s labor and plan of care.
DISCUSSION
I.Standard on summary judgment
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence negating an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. An adverse party cannot defeat a motion for summary judgment merely by resting on its pleadings and assertions of disputed facts, rather it must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
II.The Massachusetts Tort Claims Act
Pursuant to the Massachusetts Tort Claims Act, G.L.c. 258, §2, a “public employee" shall not “be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.” While the definition of “public employee” in §1 of the Act is not detailed, courts look to the definition of “public employer” in §1 for guidance as to when a person qualifies as a “public employee.” See Kelley v. Rossi, 395 Mass. 659, 661 (1985). The definition of “public employer” requires that the employer exercise “direction and control over the public employee.” In a particular instance of conduct by an agent of a public employer, it is a question of fact whether there was an exercise of direction and control by the employer over the agent’s actions. Williams v. Hartman, 413 Mass. 398, 400 (1992). Where the material facts surrounding the issue of direction and control are undisputed, however, summary judgment is appropriate. This principle is made clear by the reported cases concerning whether a physician may be held, on summary judgment, immune from liability as a “public employee” under the Act. Those cases provide the framework for the analysis of whether a nurse is entitled to summary judgment where she performed services as an employee/agent of a public employer.
III.Physicians as “public employees”
In cases involving physicians employed by a public body, the Supreme Judicial Court has described the relevant factual inquiries to determine whether the physician is a public employee protected from liability under the Tort Claims Act. “A physician is not necessarily a public employee simply because a public entity pays his or her salary, provides a retirement fund or manages a vacation schedule.” Williams, 413 Mass. at 400. Because a physician is a member of a “distinct” profession that requires a high level of skill, training and independent judgment, a physician is not typically subject to the direction and control of another. Thus, the “very nature of a physician’s function tends to suggest that in most instances he will act as an independent contractor.” Kelley, 395 Mass. at 662. On the other hand, a physician is not always an independent contractor. A house officer, such as a resident physician, has duties and obligations to the hospital consistent with being a servant/employee. Id. at 663. Accordingly, denial of summary judgment is required where there are disputed factual issues regarding whether the physician is subject to the direction and *561 control of his day-to-day activities. See Smith v. Steinberg, 395 Mass. 666, 669 (1985) (disputed fact issues regarding doctor’s discretion to choose what patients to see and when or where to see them; doctor held appointments to staffs of multiple hospitals including non-public hospital); Kelley v. Rossi, supra (summary judgment denied where physician employee of public entity was working in a private hospital at time of alleged negligence). See also Williams v. Hartman, supra (disputed issues of fact presented as to whether physician was directed or controlled by anyone at public employer concerning day-to-day activities); Hopper v. Callahan, 408 Mass. 621, 634 (1990) (summary judgment denied for physician employee of state mental health center where record was inadequate to determine issue of direction and control; the right to control hours and working schedules and the right to supervise the doctor and who his patients are will be relevant considerations).
The exercise of independent professional judgment, however, does not, by itself, mandate a finding that the physician is outside the direction and control of his public employer. McNamara v. Honeyman, 406 Mass. 43, 48 (1989) (“While physicians exercise independent judgment, a physician can still be deemed a servant where the principal controls the details of the physician’s activities”). Hospital residents on the payroll of a public employer were entitled to summary judgment notwithstanding the exercise of professional judgment where they did not admit patients or choose which patients to treat. The residents, while subject to the direction and control of attending physicians, were also subject to the direction and control of their public employer. Williams v. Bresnahan, 27 Mass.App.Ct. 191, 192-93 (1989). See also Hull v. Foley, 17 Mass. L. Rptr. 187 (Mass.Super. 2004, Agnes, J.) (summary judgment for physician required to abide by policies and procedures of public employer, supervised by physician employees of public employer including scheduling and work assignments; no compensation directly from patients).
Abell-Bardsley contends, however, that the 2002 decision of the Supreme Judicial Court in Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, 320-21 (2002), simplifies the analysis required to determine whether a physician is a protected public employee. In Dias, the Court held that, pursuant to common-law principles of respondeat superior, a corporation employing a physician is vicariously liable for the negligence of the physician occurring within the scope of his employment, regardless of the employer’s right to direct or control the specific activities of the physician. Because previous cases concerning liability of a physician under the Tort Claims Act appeared to equate the respondeat superior principle with the right to direct and control under c. 258, Abell-Bardsley argues for a bright line rule; i.e., if the actor is employed by a public employer, she is automatically a public employee under the statute. Such a bright line rule is not warranted. Dias is not a case under c. 258. Moreover, Dias recognized that the statutory command of finding a right to direct and control the employee for purposes of determining whether the actor is a public employee under the statute is an additional requirement beyond common-law analysis of respondeat superior. Id. at 321.
Consequently, in order to determine whether Abell-Bardsley is entitled to summary judgment, the court must appraise the undisputed facts regarding Abell-Bardsley’s employment and conduct as a nurse in order to conclude whether, as a matter of law, she was subject to the exercise of direction and control by her public employer.
IV. Nurse as a “public employee”
Plaintiffs rest their contention that a genuine issue of material fact exists that prevents summary judgment for Abell-Bardsley on a single assertion: that as a nurse, Abell-Bardsley exercised independent judgment in the course of her treatment of Pedro and Brandon. This assertion is not rebutted by Abell-Bardsley and, for purposes of summary judgment, is accepted as undisputed. The question then becomes whether the exercise of independent, professional judgment, by itself, in light of all of the other undisputed facts concerning the terms, details and nature of Abell-Bardsley’s employment, means that she was not a public employee subject to the direction and control of her employer.
Application of the case law concerning physicians compels the conclusion that Abell-Bardsley, as a nurse, is a public employee immune from liability under the Tort Claims Act. First, the possible exclusion of an employed physician from the statutory immunity is based upon a recognition of the “distinct” nature of the profession of a physician and the “high level” of independent judgment involved. Kelley, 395 Mass. at 662. On the other hand, “there is hardly any question that a member of a hospital’s nursing staff is a servant of the hospital.” Hohenleitner v. Quorum Health Resources, Inc., 435 Mass. 424, 432-33 (2001) (recognizing that under the Tort Claims Act even a physician may be deemed a servant where the hospital controls details of the physician’s physical activities, notwithstanding that hospital can never control the independent medical judgment of physician).
Second, the recognition that medical residents (physicians) employed by a public employer are entitled, on a motion for summary judgment, to immunity under the Tort Claims Act strongly supports the same result for nurses. See Williams, 27 Mass.App.Ct. at 192-93.
Finally, to deny summary judgment on the sole basis that a nurse exercised professional judgment would create an exception that would swallow the rule of immunity for public employees. It is illogical to *562 interpret the requirement of “direction and control” of § 1 of the Act to mean that it applies only to employees (such as a floor sweeper or window washer) who arguably exercise no, or very little, independent, professional judgment. As the case law describes, direction and control of an employee’s daily activities, such as providing work schedules and assignments and the protocols and rules for conduct, satisfy the statutoiy definition when combined with other indicia of employment.
CONCLUSION
For the reasons stated above, the motion for summary judgment to dismiss all claims against Abell-Bardsley is ALLOWED.

The unsworn opinion letters do not qualify as material to be taken into consideration upon a motion for summary judgment. See Mass.R.Civ.P. 56(e). In any event, the letters address the alleged negligence of defendants rather than the facts surrounding Abell-Bardsley’s employment. Both letters, however, criticize Abell-Bardsley for failure to “activate her nursing chain of command” at the hospital.